UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARMANDO SANDOVAL,

Plaintiff,

v.

D. FERRER,

Defendant.

Case No.  24-cv-04045-RMI

**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 19

Now pending before the court is Defendant Ferrer's Motion for Summary Judgment on the merits and on qualified immunity grounds. (Dkt. 19.) Plaintiff filed an opposition (dkts. 22, 23) and Defendant filed a reply (dkts. 27, 28). For the reasons stated below, Defendant's Motion is granted.

**BACKGROUND**

Plaintiff alleges that on November 24, 2023, he was vomiting blood, had trouble breathing, had pressure in his chest, felt pains in his side, and was exhibiting other symptoms. (Compl. ¶ 7, Dkt. 1.) When his health did not improve, he sought medical help on November 28, 2023, at the Facility C Medical Clinic. (Compl. ¶ 8; Sandoval Dep. 17:4–6, 19:8–9, May 27, 2025, Dkt. 19-1.) Plaintiff stated that his symptoms at the time included chest pain, boils on his body, headaches, a cough, vomiting, swelling feet, and pain in his back and side. (Sandoval Dep. 19:22–25.) He did not have an appointment but was allowed to enter the clinic after describing his symptoms to an officer. (Compl. ¶ 8; Sandoval Dep. 21:3–13.) According to Plaintiff, he then reported his symptoms to a nurse he described as an Asian female approximately 5'3" to 5'5" tall and approximately 30 to 45 years-old with a heavy accent. (Compl. ¶ 9.) Plaintiff later determined the nurse was Defendant. (Compl. ¶ 9.) He alleges that in response to his symptoms, Defendant said, "if you can talk, you can breathe," "stop being a baby," and "if you can walk it's not really an emergency." (Compl. ¶ 9; Sandoval Dep. 22:10–15.) She then told him to submit a health care

United States District Court
Northern District of California

request form but did not offer him any treatment. (Compl. ¶ 9; Sandoval Dep. 22:16–25.) Defendant disputes these facts and denies that this interaction ever occurred. (Ferrer Decl. ¶ 4, Dkt. 19-3.) She states that she was not working at the Facility C Medical Clinic that day and was instead assigned to a different location of the prison to provide immunization shots, and that she did not evaluate any patients that day or interact with Plaintiff. (Ferrer Decl. ¶ 5, Dkt. 19-3.) She also states that she has never spoken to a patient with words like those in Plaintiff's allegations. (Ferrer Decl. ¶ 4, Dkt. 19-3.) Defendant has included the sign-in-sheet for where she was working that day. (Ferrer. Decl. Ex. A, Dkt. 19-3 at 5.)

Plaintiff submitted a health care request form three days later on December 1, 2023. (Feinberg Decl. Ex. B, Dkt. 19-2 at 11.) The form states, "every time I breath I get a big sharp pain on my left side, on the center of my back, I do not know if my lungs is or if I simply pull[ed] something." (*Id*.) Plaintiff alleges that his condition worsened drastically in the 24 hours after he submitted this form, and he began to experience symptoms like nausea, brown urine, coughing up bloody mucus, and large painful rashes on his arms and legs.

Plaintiff was seen by Defendant on December 4, 2023. (Ferrer Decl. Ex. C, Dkt. 19-3 at 10–17; Ferrer Decl. ¶ 6; Compl. ¶ 12.). Plaintiff states that he told Defendant that he had chest pain and trouble breathing and then vomited. (Sandoval Dep. 25:16–26:24; Compl. ¶ 12.) Plaintiff contends that Defendant became angry and told him that he needed to leave so she could clean up his vomit, and that he needed to submit another health request form. (*Id*). He alleges that she provided no treatment during this visit. (*Id*.).

Defendant disputes these facts. (Ferrer Decl. ¶ 6–9.) She states that his primary complaint at the appointment was pain in his back while breathing and that he did not report or complain of any other symptoms. (Ferrer Decl. ¶ 7; Ferrer Decl. Ex. C, Dkt. 19-3 at 10–13.) She examined Plaintiff, including taking his temperature and vitals, and his oxygen saturation and temperature were normal. (Ferrer Decl. ¶ 8; Ferrer Decl. Ex. C, Dkt. 19-3 at 11.) She did not observe him cough or vomit during the evaluation and his lungs sounded normal. (Ferrer Decl. ¶ 8; Ferrer Decl. Ex. C, Dkt. 19-3 at 14–15.) Her account of the visit is supported by her written evaluation and medical report. (Ferrer Decl. Ex. C.) She concluded that Plaintiff was experiencing left-sided

United States District Court
Northern District of California

musculoskeletal back pain. (Ferrer Decl. ¶ 9; Ferrer Decl. Ex. C, Dkt. 19-3 at 16–17.) She documented a treatment plan that included providing education on muscle strain and administering Tylenol for pain relief. (Ferrer Decl. ¶ 9; Ferrer Decl. Ex. C, Dkt. 19-3 at 17; Ferrer Decl. Ex. D, Dkt. 19-3 at 19–25.) Defendant also scheduled a follow-up appointment in seven days, advised Plaintiff to rest and avoid strenuous activities, and informed him about the procedure for requesting urgent healthcare. (Ferrer Decl. ¶ 9). Plaintiff signed the discharge paperwork with her findings. (Ferrer Decl. Ex. D, Dkt. 19-3 at 26.) Plaintiff had no other interactions with Defendant.

On December 6, 2023, Plaintiff submitted a health care request form indicating that his urine was brown and he believed he had an infection. (Iranmanesh Decl. Ex. C, Dkt. 19-1 at 72.) He also wrote on the request form that he had recently attended a "respiratory check-up." (*Id*.) Plaintiff alleges that he passed out after completing this medical form and was taken to the medical triage center for evaluation. (Compl. ¶ 13.) According to the December 6, 2023, medical report, Plaintiff told a different nurse that he had shortness of breath, chest pain, and had been suffering from throbbing back pain since approximately November 30, 2023, and that it had worsened since December 5, 2023. (Feinberg Decl. Ex. B, Dkt. 19-2 at 31–34.) The medical report also reflects that he denied any nausea or vomiting. (*Id*. at 34.) He had a fever of 100.6 degrees which he reported having for the previous 24 hours. (*Id*. at 37.) He was then transported to Natividad Medical Center. (*Id*.)

At the outside hospital, it was determined that Plaintiff had Valley Fever, pneumonia, an accumulation of fluid in his lungs, and liver damage. (Compl. ¶ 13; Feinberg Decl. Ex. B, Dkt. 19-2 at 46–48.) The Natividad hospital medical report reflects that Plaintiff stated that his symptoms began "a week ago." (Feinberg Decl. Ex. B, Dkt. 19-2 at 38.) The report also reflects that he denied any nausea or vomiting. (*Id*. at 39–40.) He was treated with intravenous antibiotics, antifungal medications, and other medicines and was discharged after ten days on December 16, 2023. (*Id*. at 53–54.)

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

United States District Court
Northern District of California

law." Fed. R. Civ. P. 56(a). To prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, a court will draw all reasonable factual inferences in favor of the nonmovant. *Id*. at 255. In deciding summary judgment motions, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. However, conclusory or speculative testimony or allegations do not raise genuine issues of fact and are insufficient to defeat summary judgment. *See e.g., Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*). A determination of a "deliberate indifference" claim involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059–60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate

4

it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but did not actually know, the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

### DISCUSSION

The court first notes that Plaintiff's Valley Fever and ten-day hospital stay requiring intravenous medication qualifies as a serious medical need, and Defendant has not contended otherwise. The only issue is whether Defendant was deliberately indifferent in her treatment of Plaintiff prior to the hospitalization.

Plaintiff's first key allegation is that he saw Defendant without an appointment on November 28, 2023, where she denied him any care despite his serious symptoms like nausea and vomiting. However, Defendant was not working at the clinic that day and submitted evidence demonstrating that she was at a different location in the prison and did not evaluate any patients or interact with Plaintiff that day. Plaintiff's only response to this evidence is that he identified Defendant as the nurse.

Furthermore, Plaintiff's description of his symptoms to other staff at the prison and the hospital reflects that he was not in distress as early as November 28, 2023, and he was not vomiting or experiencing nausea. Plaintiff's health care request form on December 1, 2023, only mentioned that he felt pain on his left side and back while breathing and that he was unsure if he had pulled a muscle. There was no mention of nausea or vomiting. Plaintiff saw other nurses for medical treatment on December 6, 2023, and stated that he had experienced pain and shortness of breath for about a week, since November 30, 2023, the day before his December 1 health care request. He again denied any nausea or vomiting. When Plaintiff was treated by staff at the outside hospital, he also stated that his symptoms began about a week before and he denied nausea or vomiting. This evidence contradicts Plaintiff's allegations that he started experiencing symptoms on November 24, 2023; that he complained of vomiting blood and other symptoms when he visited the clinic on November 28, 2023; and that he vomited on December 4, 2023. Plaintiff does

United States District Court
Northern District of California

not address why his written medical requests and his reports to other physicians failed to mention the symptoms that he now contends he was experiencing at that time. While there could be an explanation for these discrepancies, it was Plaintiff's burden to present the court with his arguments, and he has not done so.

Defendant has met her burden of showing the absence of a genuine issue of material fact for this aspect of the claim because she submitted evidence that she was at a different location and the undisputed medical records show that Plaintiff was not suffering from the symptoms he now describes. Plaintiff has not met his burden of demonstrating that there is a genuine issue for trial. His response to this evidence, simply that he recognized Defendant, is insufficient, and he does not address the conflict between his allegations and the medical reports. "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

Plaintiff's second key allegation is that Defendant denied him medical care on December 4, 2023, despite Plaintiff reporting serious symptoms and vomiting in front of her. The parties do not dispute that Defendant saw Plaintiff on December 4, 2023, in response to his request to address the pain on his left side and back when breathing. The medical report from that visit reflects that Defendant treated Plaintiff, checked all his vital signs, and created a plan to address what she believed was musculoskeletal pain. Defendant included an opinion from another doctor who reviewed Plaintiff's medical file and concluded that there were no indications that he had an infection at that time. (Feinberg Decl. ¶ 21, Dkt. 19-2.) During that appointment, Plaintiff did not have a fever, he was not coughing, his lung examination was normal, and his oxygen levels were normal. (*Id*.) It was reasonable and medically acceptable for Defendant to conclude that Plaintiff's symptoms were musculoskeletal in nature and possibly indicated a pulled muscle as Plaintiff himself believed. (*Id*.)

Plaintiff maintains that he was denied care again on that day. In response to Defendant's full medical report for the December 4, 2023, visit, Plaintiff only states that Defendant authored the report, presumably arguing that the report was fabricated. If Defendant did fabricate the report,

United States District Court
Northern District of California

Plaintiff does not address the medical reports from other staff at the prison and at the outside hospital, who would have no motive to lie in their reports. Those reports support Defendant's contention that she properly treated Plaintiff on December 4, 2023, and that he did not complain of the symptoms he now claims.

Furthermore, Plaintiff's December 6, 2023, medical request form indicates that he had recently attended a respiratory check-up. This appears to reference the December 4, 2023, visit with Defendant where he complained of pain while breathing. The form makes no reference to being denied care and appears to confirm that he had a routine check-up with Defendant for respiratory issues as noted in Defendant's medical report.

Defendant has again met her burden of showing the absence of a genuine issue of material fact as to her provision of care on December 4, 2023. Plaintiff has not met his burden in demonstrating that there is a genuine issue for trial. His response to the evidence above is that Defendant must have fabricated the medical report—this is insufficient and does not address the consistency between the findings of her medical report and the other medical reports from the prison and the outside hospital. Nor does he address his medical request form that appears to confirm he had a normal routine checkup with Defendant.

Moreover, even assuming that Defendant denied Plaintiff care on November 28, 2023, and December 4, 2023, the undisputed facts demonstrate the Defendant was not deliberately indifferent to Plaintiff's medical needs. At these visits, Plaintiff only reported pain issues, usually related to breathing, and said he believed he may have pulled a muscle. His symptoms did not point to an infection or Valley Fever, as noted in Defendant's expert's medical opinion. (Feinberg Decl. ¶ 21, Dkt. 19-2.) Because Defendant was not aware of these symptoms, she could not be deliberately indifferent to his medical needs. *See Gibson*, 290 F.3d at 1188 (9th Cir. 2002).

To the extent that Plaintiff's treatment for Valley Fever may have been delayed for several days before he was taken to the hospital, the "mere delay of [treatment], without more, is insufficient to state a claim of deliberate medical indifference. . . . [a prisoner] would have no claim for deliberate medical indifference unless the denial was harmful." *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Defendant presented this argument in

the summary judgment motion, but Plaintiff has not presented any allegations or evidence that any delay in treatment was harmful. It is undisputed that when Plaintiff submitted a medical request form on December 6, 2023, and was seen by medical staff, it was the first time he had a fever and complained of shortness of breath. Based on these new symptoms, Plaintiff was promptly taken to an outside hospital where he was treated. Plaintiff has failed to show that Defendant was deliberately indifferent to his medical needs, and her summary judgment motion is granted.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

A right is clearly established if it was "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). The Supreme Court has repeatedly cautioned that courts should not define clearly established law at a high level of generality. *See White v. Pauly*, 58 U.S. 73, 79 (2017) (per curiam); *see, e.g.*, *Kisela v. Hughes*, 584 U.S. 100, 104–08 (2018) (per curiam) (officer entitled to qualified immunity for shooting a woman who was armed with a large knife within striking distance of her housemate and ignored officers' orders to drop

United States District Court
Northern District of California

the weapon).

The Court has not found the violation of a constitutional right. Even if there was a constitutional violation, it would not be clear to Defendant or any reasonable medical professional that Plaintiff had Valley Fever based on his symptoms and that only treating him for his complaints of muscle pain would be unlawful. As such, Defendant is entitled to qualified immunity.

**CONCLUSION**

Accordingly, for the reasons stated herein, Defendant's Motion for Summary Judgment (dkt. 19) is **GRANTED**. A separate judgment shall issue and the Clerk is requested to close this case.

**IT IS SO ORDERED.**

Dated: May 4, 2026

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California